PER CURIAM:
This action was brought by claimants, political committees for the elections of Barbara Evans Fleischauer and Robert M. Bastress, Jr., during the 2000 election campaigns. Claimants allege that certain political signs and wire frames were destroyed by respondent without the knowledge or consent of the claimants. The signs and wire frames were being stored in a building on Monongahela Boulevard in Morgantown, Monongalia County. The building was condemned by respondent and respondent took actual possession of the building on or about April 11, 2001. Respondent admits that it was in possession of the particular building through an Order entered by the Monongalia County Circuit Court and it admits that its employees destroyed the political signs and wire frames which are the subject matter of the claim. The Court is of the opinion to make an award in this claim for the reasons set forth herein below.
The testimony in the hearing of this claim established the following facts:
1. The political action committee for Barbara Evans Fleischaur purchased certain political signs for both the primary and general election campaigns for Ms. Fleischaur. After the campaign ended in November 2000, these signs which were reused in various campaigns were stored at Ms. Fleischaur’s law office located at 3248 Monongahela Boulevard in Morgantown, Monongalia County. The value of the 600 stored signs and wire frames is $2,120.00.
2. Ms. Fleischaur was notified by the respondent that it intended to condemn the building where the signs were being stored and in which she maintained her law office so she moved her law office in November 2000. At the time of her move, she discussed the political signs with one of the owners of the premises, Francis Oates, who agreed that she could continue to store the signs at the premises until respondent took possession of the building.
3. Ms. Fleischaur was reimbursed for her moving expenses by respondent in the amount of $3,'799.00 and $840.00 for other various costs related to movingher law office. These expenses were paid to her as relocation expenses since respondent was taking private property for pubic purposes.
4. Robert M. Bastress, Jr., the husband of Ms. Fleischaur, was a candidate for the West Virginia Supreme Court of Appeals in the primary election in May 2000. At that time he had a political committee which purchased 5,000 political signs and wire frames for the campaign. After his unsuccessful campaign, he estimated that there were about 1,800 signs and wire frames left from the campaign which he stored at his wife’s law office. He placed the value for these signs and wire frames at $3,587.04.
5. When Ms. Fleischaur was driving past the condemned building, which she remembers as being a Friday in the month of January 2001, she noticed a light on in the building so she asked her husband to go to building to check on the signs and wire frames. He went to the building sometime in the next couple of weeks (he could not remember if it was in January or February 2001) at which time he was advised by an employee of the respondent that the signs and wire frames had been “thrown out.” That was the first notification to claimants that the signs and wire frames had been destroyed.
Claimants assert that the signs and wire frames were wrongfully destroyed by respondent when it occupied the condemned building. Claimants contend that if Ms. Fleischaur or Mr. Bastress had been notified that respondent wanted the signs and wire *116 frames removed from the premises, the signs and metal frames would have been removed immediately; however, they were not notified that respondent was taking possession of the premises. Therefore, claimants allege a wrongful taking of property for which the claimant Committees should be compensated.
Respondent’s position is that the signs and wire frames did not belong at the premises which was condemned and occupied by it pursuant to an Order of the Monongalia Circuit Court entered on April 11,2001. Respondent contends that it did not enter the premises until after the date of the Order. Further, respondent contends that the number of signs and wire frames alleged by claimants to have been destroyed is inaccurate. Respondent established the following facts:
1. Respondent entered into a contract for the construction of two bridges across the Monongahela River in Star City, Monongalia County. It was necessary to acquire additional parcels of real estate to accomplish this construction project; therefore, respondent acted under the 1970 Uniform Relocation and Acquisition Act to acquire the parcel on which there was a two-story building in which the law office being rented by Ms. Fleischaur was located. Ms. Fleischaur received relocation benefits as a tenant of the building.
2. Respondent entered into negotiations with the owners of the buildings on the parcel involved in this claim with condemnation resulting. Respondent was granted a right of entry and defeasible title in April 2001. It did not enter the building until after the Order was entered by the Court on April 11, 2001.
3. In accordance with respondent’s procedures, Ms. Fleischaur received a total of $4,608.54 for relocation expenses to move her law office to another location. As part of its procedure, an inventory and photographs of the items located at the law office were made at the time. The inventory list indicates that there were 200 signs at the law office. This was an estimate reached by the employee of respondent who viewed the premises for the inventory. This would have been performed in the month of September 2000.
4. The monies received by Ms. Fleischaur were for relocation expenses and did not cover the cost of any of the political signs and wire frames that were destroyed; however, the relocation monies did include the cost to move 200 signs which were in the estimate for the moving company. Thus, respondent paid the moving costs for the signs listed on the inventory.
5. Respondent’s employee Jim Phillips, the Project Manager for the construction project, and other employees first entered the building where the signs and wire frames were located on April 12, 2001, the day after the entry of the Circuit Court Order. That was the first opportunity they had access to the premises which were to be used by respondent as a field office for the construction project.
6. When Mr. Phillips entered the building, he noticed the political signs and wire frames and had the same disposed of so that the office could be occupied by staff. The signs were thrown out a window and dumped in a dumpster. No effort was made to contact the named individuals on the signs.
7. Brian Davis, a Project Engineer for respondent, stated that about a month after respondent occupied the building and disposed of the signs, a gentleman came to the office, inquired about the signs, was advised they had been destroyed and then he left.
Thus, the Court has to determine if the political signs and wire frames were wrongfully destroyed by respondent and, if so, what is a fair and reasonable amount of compensation due the claimants for the signs and wire frames. Respondent took possession of the building where the signs and wire frames were being stored in April 2001. Respondent’s employees destroyed property belonging to the claimants without *117 first making inquiry of the former owner of the building or the tenant. The identity of both of these individuals was known to respondent since the building had just been purchased and the tenant, Ms. Fleischaur, had just moved from the premises the previous November. The Court notes that Ms. Fleischaur signed a West Virginia Department of Transportation, Division of Highways Relocation Claim on December 6, 2000, which provided in part “I, the undersigned claimant certify that I was in occupancy at the time of initiation of negotiations to acquire the real property as designated above and that all my personal property has been or will be moved from the captioned parcel to 235 High Street, Morgantown.” This same document was signed by a representative of the respondent, Harry Bergstrom, onJanuary2,2001, when paperwork was being prepared to pay her for relocation expenses. The documents also establish the moving date as November 17,2000. Thus, Ms. Fleischaur was under an obligation to remove all of her possessions in accordance with the documentation she signed in order to receive compensation for relocating her law office. The Court, based upon the foregoing, has determined that the claimants may recover a portion of their losses based upon the fact that respondent’s employees have some duty of care when they dispose of personal property for which ownership can easily be determined and respondent does not exercise the due care owed the public when it carelessly destroys personal property. For this reason, the Court finds respondent liable in this claim.
The time frames in the record of this claim are confusing to the Court, but it will take official notice that the 2000 Legislative Session began on January 10,2001, for the first day of the Session and the second day of the Session was February 15, 2001. The session was not during January through March due to the election in 2000, but rather the session took place during February through April 2001. The Court is of the opinion that this change in session dates accounts for Ms. Fleischaur’s memory of the date she first saw lights in her former law office being different from respondent’s date of entry to the building.
The inventory prepared by respondent as its basis for reimbursement of claimants’ relocation expenses was done in September 2000. The Court is aware that the election occurred in November 2000, so it is logical to assume that the political signs and wire frames had been distributed as a part of the campaign efforts by the claimant Committees. Therefore, the estimate of 200 signs on the inventory may not be an accurate estimate for the number of signs at Ms. Fleischaur’s law office on the date when the same were destroyed. The estimate of the number of signs and wire frames as documented by Ms. Fleischaur and Mr. Bastress does not seem to be unreasonable to the Court. Therefore, the Court will adopt those numbers for determining the damages sustained by the claimants. However, the Court is also aware that not all of the signs were new as many of the signs were collected and stored after being used in the previous election campaigns. Also, respondent reimbursed Ms. Fleischaur for moving a certain portion of the signs according to the inventory so any award will be reduced to reflect this payment.
This is a claim wherein the principles of equity and good conscience apply. Although this Court looks to legal principles, it is also a Court which considers moral obligations of the State. Were it not for the fact that respondent had the benefit of the actual knowledge of the owners of the personal property left at the condemned premises, there may be no basis for an award; however, respondent’s employees could have made one telephone call which would have solved the issue before this Court. The Court, therefore, finds that respondent was negligent when it destroyed personal property without having attempted to contact even one of the claimants to ascertain the *118 appropriateness of destroying that property. Further, the Court has determined that a fair and reasonable calculation of the value of the signs and wire frames is $1,500.00 and $2,500.00, for the claimants respectively.
Accordingly, the Court is of the opinion to and does make an award to claimants as stated herein above.
Award to Friends of Barbara Fleischaur: $1,500.00.
Award to Bastress for Justice: $2,500.00.